**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

CARLOS LEGLU,

        Plaintiff,

    v.

COUNTY OF SANTA CLARA,

        Defendant.

Case No.  13-cv-01376-BLF

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

[Re:  ECF 23]

United States District Court
Northern District of California

        Plaintiff Carlos Leglu, Jr. ("Leglu" or "Plaintiff") brings the above-captioned employment action, claiming discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), California's Fair Employment and Housing Act ("FEHA"), and 42 U.S.C. § 1981, along with negligent failure to prevent discrimination and retaliation, against his former employer, the County of Santa Clara ("the County" or "Defendant"). Defendant moves for summary judgment on all claims, and partial summary judgment on thirteen independent issues ("Issues") on which Defendant alleges there are no disputed issues of material fact, pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes Defendant's Motion with regard to three of the four claims, and eleven of the thirteen Issues.[1]

        Having considered the briefing and oral argument of the parties, and the relevant case and statutory law, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion.

**I.    BACKGROUND**

    **A.    General Factual Background**

        Plaintiff is a former supervisor at the Fair Oaks Mental Health Center ("Fair Oaks"), a part

---

[1] Plaintiff filed a Statement of Partial Non-Opposition to Defendant's Motion with regard to the fourth cause of action under Section 1981, and the twelfth and thirteenth Issues. (ECF 48)

United States District Court
Northern District of California

of the Santa Clara County Department of Mental Health. He alleges that he was retaliated against after engaging in protected employment activities. Plaintiff participated as a witness in an internal county Equal Opportunity Division ("EOD") investigation of an employee, lead supervisor Barbara Miller, who was accused of racial discrimination and harassment toward another employee, Nancy Escobar. The EOD investigation ultimately resulted in Miller, a supervisor popular with several other staff members, being transferred from her position. Thereafter, supporters of Miller ("the Miller Team") wrote an email to supervisors ("the April Letter") that protested Miller's transfer and criticized Plaintiff's support for the EOD investigation, and a staff psychiatrist, Dr. Irene McGhee, showed Plaintiff a letter that she wrote ("the McGhee Letter"), alleging improprieties on the part of Escobar and several other staff members who were not viewed as part of the Miller Team. After Leglu's supervisor was given the McGhee Letter, Plaintiff was placed under investigation for failing to timely inform his supervisor of the allegations contained within it, most notably an allegation that Escobar was double billing for certain medical procedures.

Soon thereafter, managers at Fair Oaks informed Plaintiff that he would be transferred to another workplace. They also issued him a negative performance review, the first he had received as an employee at Fair Oaks, which Plaintiff protested. While both the investigation into Plaintiff and the review of this negative performance evaluation were pending, Plaintiff took medical leave and then resigned, alleging that he was constructively discharged.

**B.      Procedural History**

On March 5, 2013, Plaintiff filed his Complaint in the Superior Court, County of Santa Clara. (ECF 1 at 4) Defendant removed to the Northern District on March 27, 2013. (ECF 1 at 1) Defendant filed the instant Motion for Summary Judgment ("Mot.") on April 22, 2014. (ECF 23) Plaintiff filed his Opposition ("Opp.") on May 27, 2014, (ECF 43), and that same day filed a Statement of Non-Opposition ("Statement of Non-Opp.") regarding the fourth cause of action. (ECF 48) Defendant timely replied on June 10, 2014. (ECF 49)

On June 25, 2014, Plaintiff filed an Administrative Motion to submit supplementary material in opposition to Defendant's Motion. (ECF 53) Defendant did not oppose this request

2

United States District Court
Northern District of California

1  (ECF 55), and the Court granted Plaintiff's Motion on July 3, 2014. (ECF 56) The Court heard

2  oral argument on the Motion for Summary Judgment on July 24, 2014.

3       **C.**    **Defendant's Alleged Undisputed Material Facts**

4       Defendant seeks summary judgment setting forth the following material facts that it

5  submits are undisputed.

6       Plaintiff Carlos Leglu, Jr. served as Health Services Supervisor, with responsibility for

7  managing the County's Fair Oaks and North County Mental Health clinics, since 2002. (Compl. ¶

8  5)  In this capacity, Plaintiff  was responsible for managing thirty-two staff members and ensuring

9  compliance with federal and state regulations, County policies, and clinical standards. (Gilbert

10  Decl. Exh. A)  Mr. Leglu reported to Teea Gilbert, Director for Adult and Older Adult System of

11  Care Division (Gilbert Decl. ¶ 2; Leglu Depo. 48:2-6)

12       In December, 2006, Fair Oaks rehabilitation counselor Nancy Escobar filed a complaint

13  with the County's Equal Opportunity Division ("EOD") (Compl. ¶ 6), alleging that her supervisor

14  Barbara Miller was harassing her and discriminating against her on the basis of race. (*Id.*)  At the

15  time, Miller served as lead supervisor of the Adult Services Team at Fair Oaks. (*Id.*)  Plaintiff, as

16  supervisor of both Ms. Escobar and Ms. Miller, participated in the ensuing EOD investigation.

17  (*Id.*) Thereafter, Ms. Escobar filed a second complaint, alleging that Miller retaliated against her

18  for filing the first EOD complaint. (*Id.*) As a result of these pending complaints, Miller was

19  transferred to North County and relieved of her supervisory duties. (Compl. ¶ 7).  The transfer was

20  made in conformance with the County's past practice and in exercise of its management discretion

21  to transfer employees who are under investigation (*See, e.g.*, Peña Decl. ¶ 4; Copley Decl. ¶ 3;

22  Compl. ¶ 7)

23       In response to Miller's transfer, on April 7, 2006, several members of her former team

24  wrote a protest letter ("the April Letter") to Director of Mental Health Nancy Peña, Mental Health

25  Division Director Teea Gilbert, and Plaintiff, demanding Miller's return to Fair Oaks and her

26  reinstatement as lead supervisor. (Compl. ¶ 10)  Five days later, Plaintiff sent an email to Deputy

27  Mental Health Director Bruce Copley, Director Peña, his supervisor Gilbert and EOD Investigator

28  Toni Battle expressing his concern that the April Letter could be perceived as discriminatory and

1  retaliatory against Fair Oaks staff members who did not support Miller. (*Id.* ¶ 11) Mr. Leglu

2  expressed that he was "concerned about how this [letter] could be perceived." (Leglu Depo.

3  252:13-253:4)

4        Several months later, in September 2007, staff psychiatrist Irene McGhee showed Plaintiff

5  a portion of a letter ("the McGhee Letter") that she had sent to her supervisor, Dr. Tiffany Ho,

6  charging that Ms. Escobar was double billing for medical injections and was responsible for

7  documentation deficiencies. (Compl. ¶ 21) Dr. McGhee raised concerns about  potential adverse

8  audit findings. (*Id.*) The charges in the McGhee Letter raised concerns for Director Peña, who

9  instructed Director of Administration Patrick Garcia to investigate them. (Peña Decl. ¶ 3)  Plaintiff

10 did not inform his supervisor, Ms. Gilbert, of the McGhee Letter. (Gilbert Decl. ¶ 3)

11       Ms. Gilbert questioned Plaintiff about the McGhee allegations, to which Plaintiff

12 responded that his own review caused him to conclude that the charges were false. (Compl. ¶ 33)

13 Plaintiff alleges that he told Ms. Gilbert that he believed the accusations were intended as

14 harassment and retaliation against him and other staff members. (Leglu Depo. 125:5-15)  Shortly

15 thereafter, Plaintiff met with Garcia, who informed him of the investigation and instructed

16 Plaintiff not to investigate the matter on his own. (Compl. ¶ 35)

17       On October 16, 2007, Plaintiff received a transfer letter signed by Deputy Director Copley

18 on October 15, 2007, informing him that he would be temporarily transferred because he was

19 under investigation regarding employee allegations at Fair Oaks. (Copley Decl. Exh. A)  The

20 transfer was initiated by Copley to safeguard the investigation from interference by Plaintiff. (Peña

21 Decl. ¶ 4; Copley Decl. ¶ 4) When Plaintiff questioned the transfer, he was informed by Garcia

22 that the decision had been made by Director Peña in order to effectively investigate the charges in

23 the McGhee Letter. (Compl. ¶¶ 38, 40)

24       Mr. Garcia's investigation commenced in October 2007.  Ms. Gilbert informed Plaintiff

25 that he would be personally interviewed on October 22, 2007 (Compl. ¶ 41), which was later

26 moved to October 30, 2007. (*Id.* ¶ 47) The remainder of the Fair Oaks staff was interviewed by

27 October 19, 2007. (*Id.* ¶ 41; *see also* Garcia Depo. 78:9-19, 224:21-25)

28       Parallel to the investigation, from October 24 to 26, 2007, Gilbert conducted her annual

4

performance appraisals of the nine managers who reported to her, including Plaintiff. (Gilbert Decl. ¶ 4)  These appraisals cannot be used for discipline, demotion, or any other penalty. (Garcia Decl. ¶ 5)  On October 25, 2007, Ms. Gilbert provided Plaintiff with her written appraisal, noting areas of deficiency. (Gilbert Decl. Exh. A)  The performance appraisal was negative and Plaintiff disagreed with it.  Although he received some positive marks, Ms. Gilbert made negative comments regarding Plaintiff's failure to inform her about the McGhee Letter, and faulted him for failing to take "constructive, corrective managerial action at Fair Oaks." (Gilbert Decl. ¶ 4)

Based on Mental Health Department practice, the written performance appraisal was subject to change, and Plaintiff would have an opportunity to submit a written response which could lead to a modification of the appraisal. (Gilbert Decl. ¶ 5).  On December 18, 2007, while Plaintiff was on leave, he submitted such a request. (Leglu Depo. 192:14-194:21; *see id.* Exh. B)  Plaintiff was never formally disciplined or demoted, nor did he receive a reduction in pay, as a result of the performance appraisal. (*Id.* 225:10-19)

After informing Plaintiff that he would be temporarily transferred to North County, Director Peña and Deputy Director Copley decided that it instead made more sense to send Plaintiff to Mental Health Administration ("MHA").  Their reasons included the fact that North County was too small to justify a full-time supervisor; that at MHA Plaintiff would be in a position commensurate to a clinic manager where he would be responsible for administrative matters new to him, which would provide him with valuable training; and that Garcia's preliminary report showed that the investigation might take longer than originally anticipated. (Peña Decl. ¶5; Copley Decl. ¶ 5).  On October 25, 2007, Ms. Gilbert informed Plaintiff that he was being transferred to MHA and relieved of his supervisory responsibilities. (Gilbert Decl. ¶ 5; *see also* Leglu Depo. 61:1-24 (Plaintiff testifying that he was told that as of October 29, 2007, he would be temporarily transferred to MHA))

Defendant contends that neither Copley nor Peña knew that Plaintiff had complained of discrimination or retaliation (Peña Decl. ¶ 6; Copley Decl. ¶ 6), and that neither Ms. Gilbert nor Mr. Garcia influenced their decision to temporarily transfer Leglu. (*Id.*) Director Peña states that her decision to transfer Leglu was based on the nature of the charges and her desire to safeguard

1    the investigation. (Peña Decl. ¶ 4)

2         After receiving both the negative performance appraisal and the transfer letter on October

3    25, 2007, Plaintiff indicated that he was not feeling well and went home.  He returned the next

4    morning, but commenced a medical leave immediately thereafter. (Leglu Depo. 194:22-195:21)

5         Mr. Garcia continued to investigate the charges against Plaintiff, hoping to meet with him

6    upon his return to work. (Garcia Decl. ¶ 7) Plaintiff extended his leave twice, causing Garcia to

7    send Plaintiff a letter on January 17, 2008, informing Plaintiff of the allegations against him. (*Id.*

8    Exh. A)  Mr. Leglu did not respond to the letter, and the investigation was never completed. (*Id.* ¶

9    8)  Plaintiff remained on medical leave until he submitted his resignation in May 2008, and his

10   retirement in October 2008.  (Leglu Depo. 159:10-16, 277:17-20)

11        In response to this evidence, Plaintiff has submitted evidence disputing Defendant's

12   contentions, and additional facts to support his Opposition.  Plaintiff's evidence is discussed in

13   detail below.

### D.    Evidentiary Objections

15        In its Reply, Defendant raises twenty-five evidentiary objections to paragraphs or

16   statements in the Declaration of Carlos Leglu, Jr. (Def.'s Reply at 1-2)[2] The Court SUSTAINS

17   Defendant's hearsay objections to the following paragraphs in the Leglu Declaration, pursuant to

18   Federal Rule of Evidence 802: (1) the last sentence of paragraph 14; (2) the second and third

19   sentences of paragraph 15; (3) the second sentence of paragraph 18; (4) the second, third, and sixth

20   sentences of paragraph 20; and (5) paragraph 28. The Court further SUSTAINS Defendant's

21   objection to paragraph 36, which lacks foundation.

22        The remaining evidentiary objections are OVERRULED.

## II.   LEGAL STANDARD

24        Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary

25

---

26   [2] The Court notes that Defendant's evidentiary objections do not conform to Civil Local Rule 3-

27   4(c)(2), Civil Local Rule 7-3(a), or the Court's Standing Order, requiring all evidentiary
     objections to be double-spaced. (*See* Standing Order Re: Civil Cases at 7) Counsel is instructed to
     conform their briefing to the guidelines of this Court and the rules of this district in all future
28   papers presented to the Court.

United States District Court
Northern District of California

1  judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions

2  on file, together with the affidavits, if any, show that there is no genuine issue as to any material

3  fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v.*

4  *Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The Court draws all reasonable

5  inferences in favor of the party against whom summary judgment is sought. *See, e.g.*, *Matsushita*

6  *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Partial summary judgment that

7  falls short of a final determination, even of a single claim, is authorized by Rule 56 in order to

8  limit the issues to be tried." *State Farm Fire & Cas. Co. v. Geary*, 699 F. Supp. 756, 759 (N.D.

9  Cal. 1987) (citing *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981).

10         The moving party "bears the burden of showing there is no material factual dispute," *Hill*

11  *v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court

12  the portions of the materials on file that it believes demonstrate the absence of any genuine issue

13  of material fact." *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.

14  1987). In order to meet its burden, the moving party must "either produce evidence negating an

15  essential element of the nonmoving party's claim or show that the nonmoving party does not have

16  enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan*

17  *Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In judging

18  evidence at the summary judgment stage, "the Court does not make credibility determinations or

19  weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the

20  nonmoving party." *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp. 510, 513-14 (N.D.

21  Cal. 1995) (citing *T.W. Elec. Serv., Inc.*, 809 F.2d 626, 630).

22         A material fact is one that could affect the outcome of suit under the governing substantive

23  law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a court to find that a genuine

24  dispute of material fact exists, "there must be enough doubt for a reasonable trier of fact to find for

25  the [non-moving party]." *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009). The court

26  "determines whether the non-moving party's specific facts, coupled with disputed background or

27  contextual facts, are such that a reasonable jury might return a verdict for the non-moving party."

28  *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1250 (N.D. Cal. 2008)

United States District Court
Northern District of California

7

1   (citing *T.W. Elec. Serv., Inc.*, 809 F.2d 626, 631). If the Court finds that a reasonable jury could

2   find for the non-moving party, summary judgment is inappropriate. *See, e.g.*, *Anderson*, 477 U.S.

3   242, 248. Conclusory and speculative testimony, however, is insufficient to defeat summary

4   judgment. *See, e.g.*, *Soremekum v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see*

5   *also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and

6   speculation do not create a factual dispute for purposes of summary judgment.").

**III.   DISCUSSION**

8        Defendant seeks summary judgment of all of Plaintiff's claims, and partial summary

9   judgment as to thirteen discrete Issues.  Those Issues are set forth in in Defendant's Separate

10   Statement (ECF 24), filed in compliance with the Court's standing order, and are separately

11   addressed below.

**A.  Plaintiff's First and Third Claims for Retaliation Under Title VII and FEHA**
         **(Issues 1 through 10)**

14        Plaintiff Carlos Leglu, Jr. filed this action claiming discrimination and retaliation under

15   Title VII and California's FEHA. Title VII makes it unlawful for employers to retaliate against

16   employees who report workplace race or gender discrimination. 42 U.S.C. §2000e *et seq.* FEHA

17   similarly bars any employer from acting to "discharge, expel, or otherwise discriminate against

18   any person because the person has opposed any practices forbidden [under the Act] or because the

19   person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov't

20   Code § 12940(h); *see also Jones v. Lodge at Torrey Pines P'ship*, 42 Cal. 4th 1158, 1182 (2008).

21        Courts have adopted the three-part burden shifting test established by the Supreme Court in

22   *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to determine whether a party has

23   proven a claim of retaliation. This test demands first that the plaintiff state a prima facie case for

24   retaliation, which requires that the plaintiff establish (1) that he engaged in protected activity; (2)

25   that his employer thereafter undertook an adverse employment action against him; and (3) that a

26   causal link exists between these two events. *See, e.g.*, *Steiner v. Showboat Operating Co.*, 25 F.3d

27   1459, 1464 (9th Cir. 1994) (under Title VII); *Morgan v. Regents of Univ. of Calif.*, 88 Cal. App.

28   4th 52, 69 (2000) (under FEHA). "Because of the similarity between state and federal employment

United States District Court
Northern District of California

8

discrimination laws, California courts look to pertinent federal precedent when applying [California] statutes." *Guz v. Bechtel*, 24 Cal. 4th 317, 354 (2000). "The requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

If a plaintiff makes out a prima facie case, the burden shifts to the employer to advance "legitimate, non-discriminatory reasons" for any adverse actions, in order to rebut the presumption of discrimination or retaliation raised by the plaintiff's prima facie showing. *McDonnell Douglas*, 411 U.S. 792, 802. If the employer rebuts this presumption, the burden shifts back to the plaintiff to challenge the employer's proffered reasons as pretextual. *See, e.g., Guz*, 24 Cal. 4th 317, 355-56. The plaintiff must articulate "specific, substantial evidence" of pretext, *Crawford v. MCI Worldcom Commc'ns, Inc.*, 167 F. Supp. 2d 1128, 1135 (S.D. Cal. 2001), and cannot merely argue that the employer's decision was wrongheaded or misguided. *See, e.g., McRae v. Dep't of Corr. & Rehab.*, 142 Cal. App. 4th 377, 388-89 (2006).

The Court addresses each piece of the *McDonnell Douglas* burden-shifting test in turn, in relation to the Issues on which Defendant seeks partial summary judgment, the undisputed material facts, and any evidence offered by Plaintiff to dispute such material facts.

### 1. Plaintiff's Prima Facie Case of Retaliation

#### a. Protected Activity (Issue 1)

A party can state a claim for unlawful retaliation under Title VII under two clauses: the opposition clause, which makes it unlawful to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter," and the participation clause, barring retaliation against any employee who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *see also Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn. (Crawford)*, 555 U.S. 271, 274 (2009).

For a claim that the employee engaged in protected activity to survive summary judgment, a plaintiff "does not need to prove that the employment practice at issue was in  fact unlawful

United States District Court
Northern District of California

1    under Title VII . . . [but] must only show that [he] had a reasonable belief that the employment

2    practice [he] protested was prohibited under Title VII." *Trent v. Valley Elec. Ass'n, Inc.*, 41 F.3d

3    524, 526 (1994); *see also Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1043 (2005).

4            In challenging Plaintiff's prima facie showing of retaliation, Defendant seeks partial

5    summary judgment as to Issue 1, "Leglu did not engage in protected activity under FEHA and

6    Title VII." Citing the Ninth Circuit's ruling in *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963

7    (9th Cir. 2006), Defendant argues that Plaintiff can only claim that an action he took qualifies as a

8    protected activity if Plaintiff pled that action in his Complaint, so as to give Defendant fair notice.

9    *See Pickern*, 457 F.3d 963, 969-70 ("[T]he complaint gave Appellees no notice of the specific

10   factual allegations *presented for the first time in Pickern's opposition to summary judgment*.").

11           Unlike the situation in *Pickern*, however, Plaintiff's Complaint alleges that he engaged in

12   protected activity "by participating in the EOD investigation, by opposing discrimination and

13   retaliation against Ms. Escobar, *and by opposing discrimination and retaliation against himself,*

14   *Ms. Rivera, and Dr. Berge*." (Compl. ¶ 55 (emphasis added)) Moreover, Defendant concedes in its

15   Reply that:

16           The County does not dispute that the following actions constitute
             protected activity . . . (1) reporting Escobar's alleged fear of
17           retaliation to [Mental Health Department] management, (2)
             reporting, on December 20, 2006, Miller's alleged retaliation at
18           Escobar's birthday celebration; and (3) asserting that McGhee's
             accusations were retaliation against Escobar, Berge, and Leglu in
19           response to Miller's removal from the Fair Oaks Clinic.

20   (Reply at 4 n.1 (emphasis added))

21           Plaintiff has presented evidence that he engaged in all three of these actions outlined by

22   Defendant. In his Declaration, Leglu states, "I emailed Gilbert and Garcia that Escobar was

23   concerned about retaliation." (Leglu Decl. ¶ 9)  He further states that "[o]n December 20, 2006,

24   Miller disrupted a birthday celebration for Escobar . . . . I reported the incident to Gilbert in an

25   email titled "retaliation" (*id.* ¶ 11), and that he had a conversation with Gilbert regarding the

26   McGhee accusations. (*Id.* ¶ 25)

27           All three of these actions fall within the specific allegations made by Plaintiff in the

28   Complaint – reporting Escobar's fear of retaliation and the incident at the birthday party constitute

                                                         10

1    "opposing discrimination against Ms. Escobar," and "asserting that McGhee's allegations were

2    retaliation against Escobar, Berge, and Leglu" constitutes "opposing discrimination against

3    himself . . . and Dr. Berge." (Compl. ¶ 55) Unlike in *Pickern*, Plaintiff's undisputed facts show

4    that he engaged in three activities, arising from claims pled in his Complaint, which Defendant

5    concedes – and the Court finds – are protected activities. *See Crawford*, 555 U.S. 271, 276 (2009)

6    (holding that an employee's statement to an employer that the employer has engaged in wrongful

7    conduct "virtually always constitutes the employee's opposition to the activity").

8    As such, Defendant's Motion for Summary Judgment with regard to Issue 1 is DENIED.

9    ### b.  *Adverse Employment Action (Issues 2 through 5)*

10   Next, Defendant seeks partial summary judgment to establish that Plaintiff's performance

11   appraisal, the intended job transfer to mental health administration, and the alleged constructive

12   discharge were not adverse employment actions under Title VII or FEHA.

13   Courts define "adverse action" broadly, finding that "a wide array of disadvantageous

14   changes in the workplace constitute adverse employment actions." *Ray v. Henderson*, 217 F.3d

15   1234, 1240 (2000) (compiling cases to note that the Ninth Circuit takes an "expansive view of the

16   type of actions that can be considered adverse," including lateral transfers, unfavorable references,

17   and the imposition of a more burdensome work schedule). An adverse employment action "must

18   materially affect the terms, conditions, or privileges of employment to be actionable," though this

19   determination "should take into account the unique circumstances of the affected employee as well

20   as the workplace context of the claim." *Yanowitz*, 36 Cal.4th 1028, 1052. The Ninth Circuit has

21   found that an action is cognizable as adverse "if it is reasonably likely to deter employees from

22   engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (finding that actions

23   which decreased an employee's pay, decreased the amount of time he had to complete his work,

24   and decreased his ability to influence workplace policy qualified as adverse actions). A court need

25   not consider "whether each alleged retaliatory act constitutes an adverse employment action in and

26   of itself," but instead can consider the alleged adverse actions collectively. *Yanowitz*, 36 Cal.4th

27   1028, 1055-56.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1                *i.*      *Plaintiff's Performance Appraisal (Issue 2)*

2         The Ninth Circuit has held that an undeserved employment rating or review, if proven, can

3   constitute an adverse action. *See, e.g.*, *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

4   The employment rating, however, must be "sufficiently final" and not subject to modification. In

5   *Brooks v. City of San Mateo*, this circuit held that an evaluation that was subject to modification

6   by the employer could not be considered an adverse employment action. *Brooks*, 229 F.3d 917,

7   930 ("Because the evaluation could well have been changed on appeal, it was not sufficiently final

8   to constitute an adverse employment action.").

9         Defendant seeks summary judgment as to Issue 2, "Leglu's performance appraisal was not

10   an adverse action." It is undisputed that Leglu received a negative performance evaluation, with

11   which Leglu disagreed. (Leglu Depo. 234:10-235:24) Leglu further submitted requests to Bruce

12   Copley and the County's Labor Relations Department to administratively review his performance

13   appraisal. (Leglu Depo. at 214:5-215:8; *id.* at 192:14-21)

14         Although Plaintiff denies that the performance review was not final, pointing to his

15   deposition testimony in which he states that he believed the performance review was "completed .

16   . . based on that it was in written form, and I was never told that it was not complete." (Leglu

17   Depo. 228:16-228:19) Plaintiff's "belief" is not evidence of the status of the employment

18   appraisal. Plaintiff fails to submit evidence to actually dispute the fact that the performance

19   appraisal was not final. It is undisputed that Plaintiff filed two appeals seeking administrative

20   review of his appraisal. (*See, e.g.*, Severian Decl., ECF 29-1 Exh. A at 35 (Plaintiff's request for

21   administrative review, sent to Bruce Copley)) Thus, the performance evaluation was not

22   "sufficiently final" to be considered a materially adverse action, *see Brooks*, 229 F.3d 917, 929-30,

23   as it could have been modified upon administrative review.

24         Defendant's Motion for Summary Judgment on Issue 2 is therefore GRANTED. Plaintiff's

25   performance appraisal was not an "adverse action" for purposes of his Title VII or FEHA claims.

26                *ii.*      *Plaintiff's Intended Job Transfer to MHA (Issues 3 and 4)*

27         Defendant argues that Plaintiff's transfer from Fair Oaks to MHA was not an adverse

28   action for two reasons: (1) because it was only temporary (Issue 3), and (2) because he was never

1    actually transferred (Issue 4). The Court disagrees.

2         A job transfer can constitute an adverse employment action. *Ray v. Henderson*, 217 F.3d

3    1234, 1241 (9th Cir. 2000) ("While mere ostracism by co-workers does not constitute an adverse

4    employment action, a lateral transfer does.") (internal citations and punctuation omitted). A

5    transfer to a different job with "the same pay and same status may constitute an adverse

6    employment action." *Id.*

7         Defendant first seeks summary judgment on Issue 3, "Leglu's intended job transfer to

8    [MHA] was not an adverse action because the intended transfer was temporary." Plaintiff

9    produces evidence, however, that calls into question whether the transfer was to be temporary.

10         Defendant offers evidence to demonstrate the temporary nature of the transfer. Citing to

11    the Complaint and Plaintiff's deposition, Defendant submits that, following Plaintiff being told he

12    would be transferred to North County, Ms. Gilbert informed Leglu that he would instead be

13    transferred to MHA as of Monday, October 27, 2007. Defendant alleges that Leglu acknowledges

14    this to be a temporary transfer. (*See* Leglu Depo. 226:3-227:2; Compl. ¶ 51)  Leglu presents the

15    Court with evidence, however, that could cause a reasonable jury to find that the transfer was not

16    intended to be temporary. In an email written by Garcia and sent to Peña and Copley on October

17    20, 2007, seven days before the date on which Leglu was to be transferred, Garcia writes:

18
19                 If Carlos [Leglu] is disciplined, I'm not sure how far it can go. We will need more discussion on that. *But I feel, at minimum, he should never be sent back to Fairoaks* (sic).

20    (Flynn Decl. Exh. U (October 20, 2007 email written by Patrick Garcia) (emphasis added))

21         This evidence at minimum creates a dispute as to whether Plaintiff's transfer to MHA was

22    to be temporary. As such, Defendant's Motion for Summary Judgment on Issue 3 is DENIED.

23         Defendant further argues that Plaintiff was never actually transferred, because he "went out

24    on leave before the temporary transfer took place," (ECF 47), and seeks summary judgment as to

25    Issue 4, "Leglu's intended job transfer to Mental Health Administration was not an adverse action

26    because Leglu was never transferred."

27         It is undisputed that Leglu went on leave prior to October 27, 2007, and did not report to

28    MHA on October 27, 2007. (*See* Leglu Depo. 195:13-21) For its position that Plaintiff was not

United States District Court
Northern District of California

13

transferred, Defendant relies on a case from the Seventh Circuit, *Ajayi v. Aramark Business Servs., Inc.*, 336 F.3d 520 (7th Cir. 2003), in which an employee was given a memorandum stating that her position was being eliminated, and that she would be demoted two weeks later. However, the employee was never actually demoted, and the Seventh Circuit found that the letter, standing alone, was not adverse. *Ajayi*, 336 F.3d 520, 531 ("An unfulfilled threat, which results in no material harm, is not materially adverse.").

Defendant's reliance of *Ajayi* is inapposite. Here, Plaintiff was twice informed that he would be transferred. First, in a letter dated October 15, 2007, sent by Bruce Copley, in which Plaintiff was told "[t]his is to inform you that you will be administratively transferred pending an internal investigation," and telling Plaintiff that he would be assigned to North County effective October 17, 2007. (Copley Decl., ECF 28-1 Exh. A) Second, Plaintiff was thereafter told that he would instead be transferred to MHA. (*See* Copley Decl. ¶ 5)

A reasonable jury could find that the transfer was completed, based on the evidence that the Plaintiff was told he would be transferred with enough specificity as to state a definitive date on which he was to report to his new job site. The letter informing Plaintiff that he was being transferred could be viewed by the jury as the materially adverse action – it was not an unfulfilled threat, as in *Ajayi*, where the company eventually decided not to demote the employee. 336 F.3d 520, 531. Defendant produces no evidence that Plaintiff would not have been transferred on October 27, 2007 had he returned to work, and this Court declines to hold that a specific notice of transfer, provided to Plaintiff, is not an adverse action merely because the Plaintiff left his job prior to the date on which the transfer was to take place.

Defendant's Motion for Summary Judgment as to Issue 4 is thus DENIED.

iii.    *Plaintiff's Constructive Discharge (Issue 5)*

A constructive discharge requires that "a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." *Satterwhite v. Smith*, 744 F.2d 1380, 1381 (9th Cir. 1984). "The determination whether conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question left to the trier of fact," *Watson v. Nationwide Ins.*

1    *Co.*, 823 F.2d 360, 361 (9th Cir. 1987), though a "single isolated instance" of discrimination is

2    "insufficient as a matter of law" to support a constructive discharge finding. *Id.* (citing *Nolan v.*

3    *Cleland*, 686 F.2d 806, 812 (9th Cir. 1982). To survive summary judgment as to constructive

4    discharge, plaintiff must provide some evidence of "aggravating factors," such as a pattern of

5    discriminatory treatment. *See Brooks*, 229 F.3d 917, 931; *see also Satterwhite*, 744 F.2d 1380.

6        Defendant seeks summary judgment on Issue 5, that "[t]he alleged constructive discharge

7    was not an adverse employment action." It is undisputed that Plaintiff received a poor

8    performance evaluation, but was never formally demoted nor received a decrease in pay. (Leglu

9    Depo. 225:16-19) Additionally, Plaintiff testified that he could not recall Patrick Garcia

10   embarrassing or humiliating him. (Leglu Depo. 113:20-23) After his evaluation, Leglu was told he

11   was being transferred, first to North County and then to MHA. (Copley Decl. ¶¶ 4, 5)

12       In response to these undisputed facts, Plaintiff presents evidence in the form of an EEOC

13   Determination, which found that the County's conduct against him resulted in his constructive

14   discharge. (Flynn Decl. Exh. K at 1 ("[T]here is reasonable cause to believe that [Leglu] was

15   constructively discharged by the [County].")) Plaintiff also points to his Declaration, and the

16   Deposition of Thomas Gradowski, the EOD Officer tasked with investigating Plaintiff's claim,

17   both of which state a number of actions Plaintiff claims the County undertook against him. (*See*

18   Leglu Decl. ¶¶ 20-21, 23-27, 29-42; *see also* Gradowski Depo., Flynn Decl. Exh. D at 177:4-

19   180:13)

20       "An EEOC determination, prepared by professional investigators on behalf of an impartial

21   agency, has been held to be a highly probative evaluation of an individual's discrimination

22   complaint." *Plummer v. W. Int'l Hotels Co., Inc.*, 656 F.2d 502, 505 (9th Cir. 1981). The Ninth

23   Circuit has cautioned, however, that a determination by the EEOC is not "somehow a free pass

24   through summary judgment." *Mondero v. Salt River Project*, 400 F.3d 1207, 1215 (9th Cir. 2005)

25   (finding that an EEOC determination alone was insufficient to defeat a motion for summary

26   judgment because it "[did] not offer any support for [Plaintiff's] attempt to show pretext").

27       In this case, however, the EEOC Determination does offer support for Leglu's argument

28   that he was constructively discharged, as it states that "[a]s a result of his protected activity,

United States District Court
Northern District of California

15

1   [Leglu] became the subject of an investigation; Respondent transferred and reassigned [Leglu] to

2   less desirable positions, and issued him a negative performance evaluation." (Flynn Decl. Exh. K

3   at 1) The Court finds that this EEOC Determination, coupled with the affirmative evidence that

4   Plaintiff presents describing the actions the County took against him, are sufficient to survive a

5   motion for summary judgment, as they show more than just a single instance of discriminatory or

6   retaliatory treatment. *See Watson*, 823 F.2d 360, 361.

7         Defendant's Motion for Summary Judgment on Issue 5 is therefore DENIED.

8               ***c.   The Causal Relationship Between the Protected Activity and the***

9   ***Adverse Action (Issue 6)***

10         To show a causal link between a plaintiff's protected activity and adverse employment

11   actions, "the plaintiff must present evidence sufficient to raise the inference that [his] protected

12   activity was the likely reason for the adverse action." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793,

13   796 (9th Cir. 1982) (citing *Hagans v. Andrus*, 651 F.2d 622, 626 (9th Cir. 1981)).

14         Defendant seeks partial summary judgment as to Issue 6, "Leglu cannot establish that Peña

15   and Copley, who decided to transfer him, knew that he complained of discrimination and

16   retaliation." Plaintiff disputes both of Defendant's purported undisputed material facts: that neither

17   Peña nor Copley knew of Leglu's complaints, and that neither Gilbert nor Garcia influenced the

18   decision to transfer Leglu. To do so, Plaintiff points to the deposition of Bruce Copley, which

19   states that the decisions to transfer and investigate Plaintiff were made jointly by himself, Peña,

20   and Garcia. (Copley Dep. 216:04-16; 224:4-7 (responding "Yes" when asked "You told the EOD

21   that the decision to administratively transfer Mr. Leglu and to conduct an investigation was made

22   *jointly by Nancy Peña, Pat Garcia, and you, is that correct?*")) Plaintiff testified in his deposition

23   that he had complained of discrimination and retaliation to Garcia. (Leglu Depo. 125:5-15 (stating

24   that he told Garcia that: "I thought all the people that were mentioned on Dr. McGhee's letter were

25   targets of retaliation. Including myself.")) This evidence – Copley stating that Garcia, who

26   Plaintiff testifies knew of his retaliation claim, was directly involved in the decision to transfer

27   Leglu – creates a disputed issue of material fact for purposes of Issue 6. As such, Defendant's

28   Motion for Summary Judgment as to Issue 6 is DENIED.

United States District Court
Northern District of California

1

2.    *The County's Legitimate, Non-Discriminatory Reasons for Employment*

2          *Actions (Issues 7 through 9)*

3          Under *McDonnell Douglas*, once a plaintiff makes out a prima facie case of retaliation, the

4   burden then shifts to the defendant to advance "legitimate, non-discriminatory reasons" for its

5   allegedly adverse actions, in order to rebut the presumption that those actions were motivated by

6   discrimination or retaliation. *McDonnell Douglas*, 411 U.S. 792, 802. Defendant must merely

7   "articulat[e] – and adduc[e] evidence supporting" *any* non-discriminatory reason for the actions it

8   took toward Plaintiff. *See Hodges v. Potter*, 319 Fed. App'x 485, 486 (9th Cir. 2009).

9          Defendant seeks partial summary judgment here with regard to three Issues, asking the

10  Court to find that it had legitimate, non-discriminatory reasons for taking three actions Plaintiff

11  alleges were adverse: "temporarily transferring Leglu" (Issue 7), "temporarily transferring Leglu

12  to Mental Health Administration" (Issue 8), and "issuing Leglu a poor performance review" (Issue

13  9). The Court GRANTS Defendant's Motion with regard to Issues 7 and 8, and DENIES

14  Defendant's Motion with regard to Issue 9.

15          i.    *The Transfer (Issues 7 and 8)*

16          The County proffers several reasons for deciding to transfer Leglu: first, due to the

17  compliance issues raised in the McGhee Letter (*see, e.g.*, Copley Decl. ¶¶ 4-5); second, so that

18  they could investigate the compliance concerns in the McGhee Letter without Leglu's involvement

19  or interference (*id*.); third, that Copley and Peña were concerned about Leglu remaining at Fair

20  Oaks because he himself had already begun to investigate the issues raised in the McGhee Letter

21  (*id*. at ¶ 4); and fourth, that Leglu would be transferred in order to protect him from any potential

22  criticism that he had tampered with the investigation. (*Id*.) Plaintiff produces evidence to dispute

23  the fact that Copley and Peña's decision to investigate him was based on the McGhee Letter. (*See,*

24  *e.g.*, Copley Depo. 176:10-23 (testifying that the decision to transfer Leglu was not based on the

25  allegations contained in the McGhee Letter))

26          Despite the introduction of this evidence, Defendant still proffers a legitimate, non-

27  discriminatory reason for transferring Leglu. Defendant states that Peña and Copley were

28  concerned that Leglu had already started to investigate the issues raised in the McGhee Letter.

United States District Court
Northern District of California

1    Though Leglu produces evidence in which Peña admits, in his deposition, that there was no

2    reasonable basis to fear Leglu's interference with the conduct of the investigation (Peña Depo.

3    212:9-12), such evidence is non-responsive to at least one reason provided by Defendant –

4    supervisors' concerns stemming from Leglu's prior investigation into the McGhee Letter.

5           Leglu's argument that this was not the actual reason for his transfer are appropriately

6    raised in determining pretext, not whether or not the reason offered was legitimate and non-

7    discriminatory. The question here, when the burden is on Defendant to offer a legitimate, non-

8    discriminatory reason, is only whether Defendant "honestly believed its reason for its actions,

9    even if its reason is . . . baseless." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th

10   Cir. 2002). Plaintiff produces no evidence showing that neither Peña nor Copley were honestly

11   concerned about Plaintiff's prior investigation into the McGhee Letter's contents. As such,

12   Defendant's Motion for Summary Judgment with regard to Issue 7 is GRANTED.

13          Defendant further seeks summary judgment on the question of whether it had legitimate,

14   non-discriminatory reasons for transferring Plaintiff to MHA instead of North County. It is

15   undisputed that North County did not require a full-time manager, due to the size of the clinic (*see*

16   Copley Decl. ¶ 5); and that Leglu's position at MHA would be commensurate to that of a clinic

17   manager, whereby he would be responsible for contract administration and adult services

18   coordination (*id*.) Plaintiff, in response, articulates a number of reasons why the transfer was

19   pretextual, and states that the position he was to hold at MHA was previously performed by a non-

20   management employee in a lower job classification.

21          The Court, however, finds no dispute as to the fact that North County had no need for a

22   full-time manager due to its size. Thus, Defendant has proffered a legitimate, non-discriminatory

23   reason for transferring Plaintiff to MHA after it had previously informed him he would be

24   transferred to North County. *See Villiarimo*, 281 F.3d 1054, 1063. Plaintiff's arguments regarding

25   pretext are not germane to the determination of whether the Defendant has provided a legitimate,

26   non-discriminatory reason for its action. *Id.* As such, Defendant's Motion for Summary Judgment

27   as to Issue 8 is GRANTED.

28

United States District Court
Northern District of California

ii.    *The Performance Appraisal (Issue 9)*

The County states that it had non-discriminatory reasons for issuing Plaintiff a negative performance review. Defendant avers that the Leglu's supervisor, Teea Gilbert, based her negative comments about Leglu on the following facts: his failure to inform her of the McGhee Letter (Gilbert Decl. ¶ 4), which contained allegations of double billing that she "would have expected any clinic manager to promptly inform her of" (*id.*); his failure to take constructive, managerial action (*id.*); and complaints she had received about Leglu's management and lack of knowledge about what was happening at the clinic. (*Id.*)

Plaintiff disputes all of the facts Defendant states are material to a determination on Issue 9. (ECF 47) Specifically, Plaintiff produces evidence from Patrick Garcia's deposition in which Garcia testifies that he found the allegations in the McGhee Letter "so lacking in support" that he did not review a single chart prepared by Escobar when looking into the allegations of Escobar's double billing (Garcia Depo. 147-13:19), and evidence from Bruce Copley's deposition where Copley states that it would have been fair for Plaintiff to assume that Gilbert would have received the McGee Letter (Copley Depo. 185:24-186:2), and that the failure to forward to McGhee Letter to Gilbert immediately was a "minor issue." (*Id.* 186:23-187:5)

This evidence calls into question whether Gilbert "honestly believed [her] reason" for the poor performance review. *Villiarimo*, 281 F.3d 1054, 1063. As such, the Court does not find as a matter of law that Defendant has presented a legitimate, non-discriminatory reason for the poor performance evaluation. Defendant's Motion for Summary Judgment on Issue 9 is DENIED.

### 3.    *Pretext (Issue 10)*

Under *McDonnell Douglas*, once a defendant presents evidence of a legitimate, non-discriminatory reason for the allegedly adverse action, the burden shifts again, back to the plaintiff to produce specific, substantial evidence that the proffered reason or reasons were pretextual. *See, e.g.*, *Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1171 (C.D. Cal. 2013). "[V]ery little evidence is necessary to raise a genuine issue of fact regarding an employer's motive," *Nicholson v. Hyannis Air Serv.*, 580 F.3d 1116, 1127-28 (9th Cir. 2009), as "any indication of discriminatory motive may suffice to raise a question that can only be resolved by a fact-finder." *Id.*

Defendant asks the Court for partial summary judgment as to Issue 10, "Leglu cannot establish a pretext for the alleged retaliation," arguing that Peña and Copley transferred Leglu so that he would not interfere with the investigation, and because the EEOC determination fails to identify the protected activity in which Leglu engaged or the allegedly adverse employment actions. (ECF 47 at 22-23) Plaintiff, however, presents the Court with enough evidence to raise a question as to whether Defendant's provided reasons were pretextual, including: Garcia's deposition testimony that the McGhee Letter's allegations were lacking in support (Garcia Depo. 147-13:19), Garcia's email, which stated that Leglu should never return to Fair Oaks after he was transferred away (Flynn Decl. Exh. U at 1-2 (email sent by Patrick Garcia)), and the EEOC Determination, which found that there was reasonable cause to believe that Plaintiff had been retaliated against and does, contrary to Defendant's arguments, note the adverse actions to which Leglu was allegedly subjected. (Flynn Decl. Exh. K) This evidence produces a triable question of fact as to whether or not the County's proffered reasons for transferring Leglu and issuing him a poor performance review were pretextual. *See Nicholson*, 580 F.3d 1116, 1127-28. As such, Defendant's Motion for Summary Judgment as to Issue 10 is DENIED.

## B. Plaintiff's Second Cause of Action for Negligent Failure to Prevent Discrimination and/or Retaliation (Issue 11)

FEHA imposes an affirmative duty upon employers to take all reasonable steps necessary to prevent discrimination from occurring in the workplace. Cal. Gov't Code § 12940. An employee who shows that he has suffered discrimination or harassment in violation of FEHA can thereafter also bring suit alleging that his employer failed to meet its affirmative duty to prevent discrimination or harassment from occurring. *See, e.g.*, *Cozzi v. Cnty. of Marin*, 787 F. Supp. 2d 1047, 1073 (N.D. Cal. 2011). To state a claim under Section 12940, a plaintiff must show that:

> (1) He was subjected to discrimination, harassment or retaliation; (2) defendant has failed to take all reasonable steps to prevent discrimination, harassment, or retaliation; and (3) this failure caused plaintiff to suffer injury, damage, loss or harm.

*Leland v. City & Cnty. of San Francisco*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008).

Defendant seeks summary judgment as to Plaintiff's second cause of action for negligent

20

failure to prevent discrimination and/or retaliation, and Issue 11, that Plaintiff cannot maintain this cause of action "because the County took all reasonable steps necessary to prevent retaliation." Summary judgment on this cause of action and Issue is inappropriate, however, due to a disputed material fact. Defendant states that the County EOD, which investigates and issues findings on employee complaints, "functions independently from the Mental Health Department and from Leglu's chain of command." (ECF 47 at 24) Plaintiff produces evidence that on January 5, 2007, Patrick Garcia emailed an EOD employee, Diane Von Merta, soliciting comments on a draft letter to Plaintiff which summarized Garcia's investigation into allegations against Plaintiff. (Flynn Decl. Exh. Z ("Here's my first draft of the letter to be sent to Carlos Leglu . . . your comments are welcome.")) This email creates a triable question of fact as to whether or not the EOD operates independently from the Mental Health Department. As such, Defendant's Motion for Summary Judgment as to Plaintiff's second cause of action and Issue 11 is DENIED.

### C.  Plaintiff's Fourth Cause of Action for Retaliation in Violation of Section 1981 (Issues 12 and 13)

Defendant seeks summary judgment with regard to Plaintiff's fourth cause of action, for retaliation in violation of Section 1981. Defendant argues that Plaintiff's claim is time-barred (Mot. at 22-23), and that Plaintiff cannot establish municipal liability under Section 1981. (Mot. at 23-24)

Plaintiff has filed a Statement of Non-Opposition to Defendant's Motion for Summary Judgment on this cause of action. (ECF 48) As such, the Court GRANTS Defendant's Motion for Summary Judgment with regard to Plaintiff's claims under Section 1981, and with regard to Issues 12 and 13.

### D.  Plaintiff's Claims for Punitive Damages

Defendant argues, pursuant to California Government Code Section 818, that the County cannot be held liable for punitive damages. Cal. Gov't Code § 818 ("[A] public entity is not liable for . . . damages imposed primarily for the sake of example and by way of punishing the defendant.") Plaintiff does not oppose Defendant's Motion to bar recovery of punitive damages. (ECF 48) The Court GRANTS Defendant's Motion, and bars Plaintiff from any recovery of

1  punitive or exemplary damages, pursuant to California Government Code Section 818.

2  **IV.   ORDER**

3      For the foregoing reasons, IT IS HEREBY ORDERED that:

4      1.    Defendant's Motion for Partial Summary Judgment is GRANTED as to Issues 2, 7

5  and 8.

6      2.    Defendant's Motion for Partial Summary Judgment is further GRANTED as to the

7  Fourth Cause of Action, and Issues 12 and 13, as Plaintiff has filed a Statement of Non-

8  Opposition.

9      3.    Defendant's Motion for Partial Summary Judgment is DENIED as to the First,

10  Second, and Third Causes of Action, and Issues 1, 3, 4, 5, 6, 9, 10, and 11.

11      4.    Defendant's Motion for Summary Judgment as to the entire action is DENIED.

13      **IT IS SO ORDERED.**

14  Dated: August 20, 2014

15  _____

16  BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California